Claudia C. Bohorquez SBN 150647
**LAW OFFICE OF CLAUDIA C. BOHORQUEZ**
8383 Wilshire Blvd. Suite 800
Beverly Hills, CA 90211-2440
Ph. : (323) 648-6761
Fax.: (323) 978-6637
Email: *cbohorquez@bohorquezlawgroup.com*

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
## IN AND FOR THE CENTRAL DISTRICT OF CALIFORNIA

JANE DOE

                          Plaintiff,

       vs.

DCFS DIRECTOR NICHOLS; CSWs: ALLEN KUAN, BERTA CARDENAS, AURA WALKER, INV. TRAEVONN JOHNSON, A.R.A. EVA REINA, COUNTY OF LOS ANGELES, & DOES 1-10 individually & in their official capacities,

                  Defendants.

Case No.: 2:25−cv−06333-WLH

**PLAINTIFF'S PETITION FOR A COURT ORDER GRANTING INJUNCTIVE RELIEF TO PREVENT THE FINALIZATION OF THE ADOPTION OF "R-1" AND "R-3" ON 8/7/25 BASED ON PERJURED TESTIMONY & EVIDENCE & FRAUD BY DEFENDANT SOCIAL WORKERS; DECLARATION; [PROPOSED] ORDER**

Plaintiff, JANE DOE, by and through her undersigned counsel, respectfully moves this Honorable Court for an order granting temporary injunctive relief to prevent the finalization of the adoption of R-1 and R-3, two foster children under the care of the County of Los Angeles, Department of Children and Family Services ("DCFS"). These two children are currently placed with other foster parents, due to material misrepresentations, including perjury and threats, committed by DCFS social workers in violation of Plaintiff's constitutional and statutory rights. Specifically, DCFS has retaliated against Plaintiff for whistleblowing and exposing DCFS inadequacies.

This motion is based upon the pleadings, records, and files in this action, the attached memorandum of points and authorities, and any oral argument the Court may allow.

## NOTIFICATION TO OPPOSING COUNSEL

On August 6, 2025, opposing counsel was notified via email at:
brenner@torresbrenner.com
Law Offices of Torres & Brenner
301 E. Colorado Blvd., Ste 614
Pasadena, CA 91101
(626) 792-3175

## I. INTRODUCTION

Plaintiff seeks emergency injunctive relief to stop the finalization of the adoption of minor R-1 and R-3, children previously placed with Plaintiff. As alleged in the complaint, Plaintiff is a foster parent and well-regarded civil rights attorney. Like the mother of the children, Plaintiff is Black. Plaintiff was the presumptive adoptive parent of the children, who were making good progress in her care.  But then  she blew the whistle on social workers, who had refused to investigate the repeated sex abuse of R-2 on his older brother, R-1. For many weeks, they also failed to file the mandated forms, which

would have triggered an immediate investigation. After Plaintiff told minors'
counsel about the sex abuse, DCFS responded by trying to take the children
from the Plaintiff—the very next day. Thereafter, all individual defendants
conspired to cover up what was happening, by making material
misrepresentations to the juvenile court. Defendants were only able to
remove the children through an *ex parte* motion.  Plaintiff was repeatedly told
that DCFS could not remove R-2, but when they took the children from
Plaintiff and gave them to a White couple, they allowed them to remove "R-
2" in an abrupt change of policy to accommodate that couple.

This motion is based on compelling evidence that DCFS is pursuing the
adoption process with that couple instead of Plaintiff in retaliation for
Plaintiff reporting the agency's inaction and inattention to the children. The
complaint contains well-pleaded allegations of fraudulent and perjurious
conduct by DCFS social workers, who misrepresented key facts in court
proceedings leading to the children's removal from Plaintiff's home. The
complaint's allegations paint a compelling and straightforward picture:
Plaintiff alleged misconduct by DCFS, and DCFS retaliated—the very next
day. This misconduct violates Plaintiff's rights to due process, equal
protection, and the integrity of the family unit, under both federal and state
law.

At a minimum, Plaintiff is entitled to temporary injunctive relief to
block the adoption, pending this Court's further review of the factual civil
rights allegations. Plaintiff meets all the requirements for temporary
injunctive relief. Given the stark and compelling evidence of retaliation
against her for whistleblowing, she has a strong likelihood of success on the
merits. Moreover, as the original caregiver for the three boys, she stands to
suffer the irreparable and grievous injury of having the three children
permanently taken from her through finalization of the adoption process.

DCFS can make no showing that the adoption process needs to be abruptly
finalized immediately. The Court should grant temporarily relief to more
closely review this case.

## II. FACTUAL BACKGROUND

The Department of Children and Family Services (DCFS) contacted Plaintiff
in July 2024 to care for three boys (a precious 4-month-old, and a 5- and 6 year-
old).  The three boys are siblings. The latter two had never visited a doctor or
dentist; never owned a toothbrush; never had their own bed; didn't know their
ABC's, and had never socialized with other children.  Plaintiff, a former
(decorated) police officer and successful and financially stable civil rights attorney,
spared no expense on the boys' education and care.  She immediately enrolled
them into Montessori school. She also substantially reduced her case load, and
centered her attention on the three boys. The social workers told her to prepare to
adopt the children. Plaintiff did so by moving to a large house in a nice beach
community, where each boy could have their own room and enjoy a large back
yard.  The boys enjoyed after school extra-curricular activities during the week and
competitive sports on Saturday with the baby. Plaintiff enjoyed "mommy and me"
swimming twice a week. The older boys attended a top-tier school, they had
musical instruments, bicycles, and pets.  A barber came every three weeks, and a
nanny and housekeeper assisted in the residence.

The Plaintiff was not compensated in any way by the Defendant COUNTY
during the five months she cared for the boys, she used her own funds for
childcare, food, shelter, clothing, entertainment, trips and held the boys out as her
own, all as envisioned by Fam. Code§ 7611 (2024).

Plaintiff, however, faced one challenge. For about six to eight weeks,
Plaintiff alerted the first social worker (Defendant CARDENAS) and her
supervisor (Defendant KUAN) of the sexualized behavior and violence by "R2"
against his older brother "R1".  Defendants ignored Plaintiff's reports, telling

Plaintiff that **<u>sibling sets cannot be separated</u>**. Defendants offered no assistance in addressing the problem and were irritated by Plaintiff's persistent requests for assistance. The sexualized behavior continued, and Plaintiff finally sent a whistleblower email to minors' counsel. The very next day, Plaintiff was threatened by CARDENAS. And that same day, CARDENAS and KUAN, and their county counsel, provided false information to the Court about Plaintiff to deceive the Court and to try to achieve their desired result: a same-day removal of the children from Plaintiff's home, just as CARDENAS had threatened. The Juvenile Court denied the request, after hearing directly from Plaintiff[1]. CARDENAS asked the children's therapist, Raquel Sanchez, to make-up lies about Plaintiff, but Sanchez declined to do so. DCFS has never denied this. CARDENAS repeatedly went to the boys' school to attempt to get negative statements from the boys, although she was removed from the case by KUAN.

On November 8, 2024, Plaintiff was served with a14-day notice of the County's intent to remove the kids— purportedly because DCFS wanted a different "parenting style" for "R-2". Plaintiff had a due process right to appeal and planned to do so. But during the 14-days, the Defendant's abruptly moved the court *ex parte* again to immediately remove the boys. This time, Plaintiff was not given any notice about the hearing. And this time, in an *ex parte* process, the Court granted the DCFS motion and moved the children that same day.

The stark result was that DCFS took the kids from an ideal surrounding in an affluent area with a successful care giver, who was Black like the children's mother. DCFS moved the kids to a less affluent neighborhood, on a busy street to be with "The Js," a Caucasian couple who had to go on social media and beg for supplies to "make the home safe" for the three boys they planned to adopt. Some of the items on their wish list were adult items.

While Plaintiff tried to get the three children back in her care, within three months, the J's sought to separate the brothers by getting rid of "R2". Thus, the

---

[1] Minors counsel gave Plaintiff notice of the ex parte motion, DCFS did not.

*EX PARTE* APPLICATION FOR INJUCTIVE RELIEF

"J's" were allowed to **"split the sibling set"** although Defendants had told Plaintiff this was against policy. A therapist reported that "R1" began acting out and mimicking "R2" while in the care of "The J's".

"R2" was placed in three different foster homes and he just turned six years old. As "R1" has begun mimicking "R2", it is reasonable to conclude that The J's may get rid of him too and elect to just keep the baby with whom they can mold more easily.

Unless this Court grants relief, tomorrow—August 7, 2025—parental rights will terminate for the two boys the J's have, and they will be allowed to finalize adoption of them. The Plaintiff, the boys first caregiver who has the cultural background and financial wherewithal to seamlessly care for the boys, moves this Court to stop DCFS from finalizing the adoption as the removal of the children violated the Plaintiffs due process rights, it was retaliatory and discriminatory.

DCFS lied and covered up allegations of child neglect by "the J's." In February 2025, it was reported that the J's left the baby outside in the driveway completely unattended for several minutes and went upstairs and inside their home. The J's denied this and the social worker never opened an investigation. Videotape surfaced of the J's leaving the baby outside as reported and Defendants covered for the Js and never placed their license in a "suspended" status. Unlike the Department's treatment of Plaintiff who had her license placed on hold for allegedly using the "F-word".

1. **Plaintiff's Foster Care of the Child:**
   Plaintiff has been the foster parent to "R1" "R2 and "R3" for five months after their traumatic removal from their parents since July 2024, and she provided a loving and supportive environment for the children. During this time, Plaintiff has met all legal and emotional obligations and the children have developed a close bond with Plaintiff's family. "R2" called her "Mom" in front of the social workers.

2. **Misrepresentations and Perjury by DCFS Social Workers:**

On November 20, 2024, "R-1", "R-2" and "R-3" was removed from Plaintiff's care following allegations that were subsequently proven to be false and misrepresented by DCFS social workers. Specifically:

- The social worker involved in the case, Allen Kuan, falsely told the Court that Plaintiff asked for too many "respites," when she actually asked for zero;

- Berta Cardenas: falsely told the Court that Plaintiff asked for too many "respites" when she actually asked for zero;  also she tried to enlist the therapist and "R2" to lie on Plaintiff in order to affect the removal of the children;

- Aura Walker: the social worker who replaced CARDENAS, told Plaintiff that she was doing a "great job" and "God Bless her" just two weeks before the 14 day notice was served.  She would later go on to make perjurious statements as false claims of neglect, abuse, or failure to meet the child's needs.

Evidence, including but not limited to videotape, now exists to show that their perjurious testimony and documents were knowingly falsified or deliberately omitted in order to mislead the court into ordering the child's removal.

3. **Court Proceedings and Continued Harm:**

Despite the discovery of these perjuries and the existence of new, compelling evidence that directly contradicts the basis for the child's removal, DCFS has continued to pursue the finalization of the adoption without rectifying its prior misconduct or providing Plaintiff with a fair opportunity to be heard.

4. **Plaintiff's Request for Relief:**

Plaintiff respectfully requests this Court to **temporarily** enjoin the DCFS from finalizing the adoption of "R1" and "R3" set to occur: at

Edelman Children's Court  in Monterey Park tomorrow, **August 7, 2025 at 8:30 A.M. Dept 412**[2], (Case # 24CCJP00844) until a full investigation and a fair hearing can be conducted into the misrepresentation and perjury by the social workers, which has materially impacted Plaintiff's constitutional rights and the welfare of the child.

## III. LEGAL STANDARD & ARGUMENT

Per *Winter v. Natural Resources Defense Council, Inc*., 555 U.S. 7 (2008), the issuance of an injunction is appropriate when a plaintiff demonstrates:

1. **A Likelihood of Success on the Merits:** Plaintiff  has shown that there is a substantial likelihood of prevailing on the merits of the case, particularly with respect to the perjury and false representations made by DCFS social workers following immediately on the heels of a whistleblowing report by Plaintiff.

2. **Irreparable Harm:** Plaintiff, and the boys, face irreparable harm, as the finalization of the adoption would permanently sever Plaintiff's bond with the children and irreversibly alter the child's life trajectory. Further it would perpetrate the injustice caused by the social workers' fraudulent conduct. The perjurious conduct of the DCFS social workers has tainted the process, which is a further violation of Plaintiff's due process rights.  Additionally, the current caregivers have already kicked one of the siblings out, resulting in a disruption of the six-year old's life. Perjury and fraud in child welfare proceedings are a direct violation of both constitutional protections and state law regarding the fair treatment of parents and foster caregivers.

3. **Balancing of Harms**: The harm to Plaintiff in allowing the adoption to proceed under these false pretenses outweighs any harm to DCFS, which has already demonstrated a disregard for the truth and due process. Granting the requested temporary relief would simply preserve the status quo and prevent further harm until the allegations of fraud and perjury can be more fully adjudicated. The harm to Plaintiff and the children in finalizing an adoption

---

[2] R2's hearing is set for September 7, 2025.

*EX PARTE* APPLICATION FOR INJUCTIVE RELIEF

based on false pretenses, discrimination, and whistleblower retaliation outweighs any potential harm to DCFS or any other party.

4. **<u>Public Interest:</u>** The public interest is served by ensuring the integrity of child welfare proceedings, cultural continuity, and by holding social workers and agencies accountable for misconduct. Public policy favors ensuring that children are placed in homes that meet their best interests and that the integrity of the adoption and child welfare system is maintained. To allow the adoption to proceed in light of this misconduct would undermine public trust in the system and send the wrong message regarding the accountability of social workers

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court issue an injunction enjoining the County of Los Angeles, Department of Children and Family Services, from finalizing the adoption of "R1" and "R3", and for such other and further relief as this Court deems just and proper.

Date: 8/6/25                          Law Offices of Claudia C. Bohorquez


                                      By:_____/S/ Claudia C. Bohorquez
                                          Claudia C. Bohorquez

DECLARATION OF CLAUDIA C BOHORQUEZ

I, Claudia C. Bohorquez, declare as follows:

1.  I am an attorney duly licensed to practice in the State of California and in this federal court, United States District Court – Central District of California.  I have personal knowledge of the facts contained in this declaration and if called as a witness could and would testify competently thereto.

2.  **STATEMENT OF NOTICE TO OPPOSING COUNSEL:**  On August 6, 2025, at or around 8:15 a.m., I sent an email to Anita Brenner, attorney for all of the Defendants in this matter, informing her that I would be filing an Emergency Motion/Petition for a Court Order for Temporary Injunctive Relieve Preventing DCFS (Dept. of Children and Family Services) from Finalizing the Adoption of "R-1" and "R-3" on 8-7-25 in L.A. Juvenile Court Case No. 24CCJP0084".

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 6th day of August, 2025, at Beverly Hills, CA.



PLAINTIFF'S EMERGENCY MOTION FOR INJUNCTIVE RELIEF

CERTIFICATE OF SERVICE

I, the undersigned, certify and declare that I am over the age of 18 years, employed in the County of Los Angeles, State of California, and not a party to the above-entitled cause.

On August 6, 2025, I served a true copy of the foregoing document(s) entitled, "**PLAINTIFF'S EMERGENCY MOTION/PETITION FOR A COURT ORDER FOR TEMPORARY INJUNCTIVE RELIEF PREVENTING DCFS FROM FINALIZING THE ADOPTION OF "R-1" & "R-3" ON 8-7-25 IN CASE #24CCJP00844" and "[Proposed] ORDER"** in the manner checked below:

[X] Email.  By electronic transmission to the following:

To Anita Brenner:  brenner@torresbrenner.com

Please check one of these boxes if service is made by mail:

[X] I hereby certify that I am a member of the Bar of the United States District Court, Central District of California.

[  ] I hereby certify that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

I hereby certify under penalty of perjury that the foregoing is true and correct. Executed on August 6, 2025.


_____*Claudia Bohorquez*_____
Claudia C. Bohorquez